**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

COMMERCIAL CREDIT GROUP, INC.,                                                     PLAINTIFF

v.                              No. 4:16CV00312 JLH

PROCESS, INC.; ABC SALVAGE & SCRAP
METAL, INC.; and JOHN DOES 1-30                                    DEFENDANTS

**OPINION AND ORDER**

Commercial Credit Group, Inc., claims that it has perfected security interests in equipment originally owned by Uniserve, LLC, that Uniserve transferred the equipment to Process, Inc., and that Process, Inc., later transferred the equipment to ABC Salvage & Scrap Metal, Inc. Commercial Credit asserts replevin and conversion claims against Process and ABC Salvage. It also asserts unjust enrichment and punitive damages claims against Process. Process moves for summary judgment, which ABC Salvage joins. The motions are denied.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

Commercial Credit provided Uniserve financing to purchase two Exodus Material Handlers—equipment used in the scrap metal industry. Document #27-1. Uniserve granted Commercial Credit security interests in each of the Exodus handlers to secure the financing. Document #27-2. Commercial Credit filed financing statements in Tennessee and Arkansas to

provide notice of its security interest in the Exodus handlers. Document #5 at ¶11. Sometime around July 17, 2013, Uniserve transferred the Exodus handlers to Process in exchange for a Sennebogen 850M Material Handler. *Id.* ¶12; Document #18 at ¶12. Process later sold one of the Exodus handlers to ABC Salvage. *Id.* ¶23. Uniserve defaulted on its loan obligations to Commercial Credit and ultimately filed for bankruptcy. *Id.* ¶¶25, 59. Before Uniserve filed for bankruptcy, Commercial Credit sought an order of delivery against Uniserve in this Court. After an evidentiary hearing, this Court ordered Uniserve to deliver certain specified personal property to Commercial Credit, among which was the Sennebogen handler. Document #16-1 at 36-40. Commercial Credit purchased the Sennebogen handler at a public auction on a credit bid. Document #16-4. Commercial Credit maintains that Uniserve's debts have not been fully satisfied and it retains a security interest in the Exodus handlers.

Process offers three independent reasons why Commercial Credit does not have priority in the Exodus handlers. First, it argues that Commercial Credit failed to perfect its security interest. Second, it argues that even if Commercial Credit perfected its security interest, Commercial Credit has received proceeds from the collateral and cannot also maintain control over the collateral. Third, it argues that it is a buyer in ordinary course of business and so took the equipment free of Commercial Credit's security interest.

Process' first and third reasons are foreclosed by its pleadings. Commercial Credit's amended complaint alleges the following:

> 8.  Uniserve, LLC . . . is headquartered in Arkansas and at all relevant times was engaged in the business of collection, processing and sale of scrap metal and products derived therefrom. It purchases equipment solely for use in its scrap metal business, and has never been engaged in the business of sale or lease of commercial equipment.
>
> \* \* \*

> 11. CCG perfected its security interests in the Collateral, including the Exodus Machine, by filing financing statements with the Tennessee and Arkansas Secretaries of State, thereby providing notice to all of the world that CCG has security interests in all equipment belonging to Uniserve, LLC.

Document #2. Process admitted the allegations in both of these paragraphs without qualification. Document #5 at ¶¶8, 11. As a rule, "[a]dmissions in the pleadings . . . are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended." *Missouri Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990) (alterations in original) (citations omitted).[1] This is true "even if the post-pleading evidence conflicts with the evidence in the pleadings." *Id.* at 1315.

The first argument by Process is devoted entirely to whether Commercial Credit properly perfected its security interest under Tennessee law.[2] As noted above, Process admitted in its answer that Commercial Credit "perfected its security interests in the Collateral, including the Exodus Machine, by filing financing statements with the Tennessee and Arkansas Secretaries of State." In light of this admission, Process' argument on perfection fails. The third argument by Process is similarly precluded. Process acknowledges that for it to receive buyer-in-ordinary-course protection, it must have purchased the collateral from "a person . . . in the business of selling goods of that kind." Document #17 at 13. Process admitted that it purchased the equipment from Uniserve and that Uniserve "has never been engaged in the business of sale or lease of commercial equipment." ABC Salvage, then, also lacks protection because, based on Process' admission, Process was not a buyer in ordinary course of business and because Process was not the seller that

---

[1] If Process wishes to amend its answer, it will need to file a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15 and Local Rule 5.5(e).

[2] The parties do not necessarily agree that Tennessee law controls. Because the analysis does not depend on deciding which state's law applies, the Court expresses no opinion. The Court cites to Tennessee law only to address Process' argument, not to say which law controls.

created the security interest. *See* Tenn. Code Ann. § 47-9-320, cmt. 3 (buyer-in-ordinary-course protection "applies only to security interests created by the seller of the goods to the buyer in ordinary course"); Ark. Code Ann. § 4-9-320, cmt. 3 (same).

Process attempts to avoid the consequences of its judicial admissions. It relies on Eighth Circuit precedent that requires judicial admissions to "be deliberate, clear, and unambiguous." *Acciona Windpower N. Am., LLC v. City of W. Branch, Iowa*, 847 F.3d 963, 968 (8th Cir. 2017). According to Process, its admissions were not clear and unambiguous because they were not made "in the context of application of the UCC" nor were they were made with sufficient knowledge. Document #33 at 4. The admissions are not ambiguous. Paragraph 11 of the amended complaint cites to "Exhibit 2, UCC Financing Statements." Moreover, the Court is hard-pressed to imagine in what context other than the UCC that admissions would be made regarding "financing statements [filed] with the Tennessee and Arkansas Secretaries of State" and "security interests." Last, insufficient knowledge is no defense to an admission. Federal Rule of Civil Procedure 8(b)(5) requires "[a] party that lacks knowledge or information sufficient to form a belief about the truth of an allegation" to "so state," which gives "the statement the effect of a denial."

Process also argues that any interest Commercial Credit had in the Exodus handlers has been extinguished because Commercial Credit was made whole when it received the Sennebogen handler, which constituted proceeds of the Exodus handlers. Process says this is so because Commercial Credit "has not stated a liquidated deficiency as to any debt for which such proceeds were collateral." Document #17 at 12. Commercial Credit states an aggregate remaining debt of $551,491.86, but Process contends that Commercial Credit has failed to show whether the proceeds of the Exodus handlers leaves Commercial Credit indebted with respect to those Exodus handlers.

As the moving party, Process bears the burden of showing that there are no material facts in dispute. Under the UCC, a secured creditor "may claim both any proceeds and the original collateral but, of course, may have only one satisfaction." Tenn. Code Ann. § 47-9-315 cmt. 2. Process bears the burden of showing that there is no dispute over whether Commercial Credit has received a full satisfaction. After an evidentiary hearing conducted by this Court in a case between Commercial Credit and Uniserve, its order of delivery stated that the actual value of the Sennebogen handler was $110,000.00. Document #16-1 at 38. Commercial Credit bought it on a credit bid of $80,000.00. The invoices from Uniserve's purchase of the two Exodus handlers reflect a list price of $523,000 each. One of the Exodus handlers was pledged as security on a note in the amount of $589,152, and the other Exodus handler was pledged as security on a separate note in the amount of $461,568. Document #27-2. Process has not met its burden of showing there is no genuine dispute as to any material fact concerning whether the Sennebogen handler fully satisfied the debt, secured by the Exodus handlers, that Uniserve owed Commercial Credit. Thus, Process has failed to show that, as a matter of law, Commercial Credit has no right to exercise control over the proceeds and its collateral simultaneously. *See Bayer CropScience, LLC v. Stearns Bank Nat'l Ass'n*, 837 F.3d 911, 915 (8th Cir. 2016).

## CONCLUSION

For the foregoing reasons, the motions for summary judgment are DENIED. Documents #16 and #20.

IT IS SO ORDERED this 21st day of September, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE